In re LEHRBACH.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

EXECUTORS AND ADMINISTRATORS (§ 465*)—CONSTRUCTION OF WILL—ACCOUNT-
ING.

Testatrix gave all her property to her two infant daughters. One of
the daughters died, and the survivor, believing that she was entitled to
the whole estate, settled with the guardian, and accepted as cash claims
against third persons, and executed a release in full, and later she was
appointed administratrix of the deceased daughter. For nine years an
adult heir of testatrix acquiesced in the construction of the will; but the
court finally determined that the title of the deceased daughter was ab-
solute at her death, and that her share in the property did not pass ex-
clusively to the surviving daughter. Held, that the surviving daughter,
in settling her account as administratrix, was liable only for the amount
actually received from the guardian, and she was not concluded by the
release.

[Ed. Note.—For other cases, see Executors and Administrators, Dec.
Dig. § 465.*]

Appeal from Order of Surrogate, New York County.

In the matter of the judicial settlement of the account of Emma
E. Lehrbach (née Sexauer), as administratrix of Elsa Sexauer, de-
ceased. From a decree of the surrogate, finally settling the account
of the administratrix and directing distribution, she appeals. Re-
versed, and proceedings remitted to the Surrogate's Court.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MIL-
LER, and DOWLING, JJ.

William F. Haemer, for appellant.
George W. Wingate, for respondent.

MILLER, J. The decree appealed from was made in conformity
with the decision of this court in this case (139 App. Div. 28, 123 N.
Y. Supp. 897), construing the will of Lina Sexauer, the mother of
the parties to this proceeding; and, were it not for a new element in-
troduced on the rehearing before the surrogate, we should affirm the
decree, now appealed from, on the authority of that decision. It is
unnecessary for me to repeat the accurate statement of facts in the
opinion of Presiding Justice Ingraham on the former appeal.

On the rehearing before the surrogate, the appellant filed an affida-
vit in which she stated that she did not in fact receive the sum of
$12,302 from the surviving guardian of herself and her deceased sis-
ter, Elsa Sexauer, as required by the decree judicially settling his ac-
counts, although she receipted for that sum and gave him a release;
but that in truth and in fact said amount included the sum of $1,378.-
47, which was stated in said decree to be the deficiency of Joseph Mol-
itor, deceased, coguardian, but which was never in fact paid to the
appellant; that it also included an item of $64.34 on deposit in the
German Savings Bank to the credit of Lina Rhinehardt (Lina Sex-
auer), which the savings bank declined to pay except to the "execu-
tors or guardians of the estate," and that it also included the sum of
$8,450, the amount deposited by Lina Sexauer with the George Bech-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

-tel Brewing Company, of which amount the appellant had been unable to collect the sum of $2,360; that she accepted said items as cash and gave a receipt therefor, preferring that course to the consumption of the estate in a litigation with the guardian; and she asked that the surrogate have an account taken and stated of the actual moneys received by her under the decree entered upon the settlement of the said guardian's account.

We think that it was error for the surrogate to ignore that request. For the sake of clarity, it may be well to state the exact situation of the parties when the decree of October 26, 1905, was made, settling the accounts of the surviving guardian of the appellant and her deceased sister, Elsa Sexauer. Elsa died on April 3, 1900. The respondent herein, the half-sister, was then either 21 or in her twenty-first year. The appellant was still an infant. When she became of age in February, 1905, she instituted proceedings to compel the surviving guardian to account. Meanwhile the respondent herein had apparently taken no steps to have the estate of Elsa administered and had made no claim to any part of it as next of kin. It was apparently assumed by everybody then interested that the appellant took as survivor the entire estate, bequeathed by the mother, for no administrator of Elsa was appointed, and her estate was not represented in the proceeding for the accounting of the surviving guardian, and the decree directed him to pay over the sum of money remaining in his hands to the appellant, obviously on the theory that she was entitled to the whole amount, pursuant to the will of her mother. The appellant did not assume to represent any one in those proceedings but herself. She had to decide for herself alone whether she would further contest the settlement of her guardian's account, or would terminate the litigation and save what little was left. To do that, she had to accept as cash the obligation of the George Bechtel Brewing Company for $8,450, the claim against the German Savings Bank for $64.34, and the item of $1,378.47, stated to have been a deficiency created by the deceased coguardian. The decree plainly shows that those items were all included in making up the amount which the surviving guardian was directed to pay over to the appellant.

As an individual, supposing that she was entitled to the entire sum, the appellant accepted those items as cash and gave a general release to the surviving guardian. That release and receipt, and the decree pursuant to which they were given, did not bind the estate of Elsa Sexauer, which was not represented. Subsequently the appellant was appointed administratrix of the deceased sister, Elsa, and she is in precisely the same situation she would have been in as defendant in a suit brought by some other person as administratrix of Elsa, if a different person had been appointed, to recover moneys actually received by her, but in fact belonging to her sister or her sister's estate. Plainly, in such an action, she would be liable only for the amount actually received, and would not be concluded by the receipt and release given her guardian. While that receipt would doubtless be evidence of the amount received, it would be open to explanation, at least, as against anybody not a party to the transaction.

If it be true, as stated in the respondent's brief, that a claim against the estate of the deceased guardian, Molitor, or the surviving guardian, who accounted, be now barred by the statute of limitations, it would appear to be the fault of the respondent, who, for at least nine years after coming of age, appears to have acquiesced in the construction of the will of her mother claimed by the appellant. At any rate, the appellant has not been charged on the theory of negligence in failing to reduce the estate to possession. If there be any such element in the case, it can only be passed upon after a trial of the issue. The surrogate should either have taken the evidence bearing upon the issue raised by the affidavit of the appellant of March 7, 1911, or should have referred it to a referee.

The decree should be reversed, and the proceedings remitted to the Surrogate's Court.

INGRAHAM, P. J., and DOWLING, J., concur.

CLARKE, J. I concur in the reversal of this order on the dissenting opinion of this court on the former appeal. 139 App. Div. 28, 123 N. Y. Supp. 897. I think this case is governed by Matter of Cramer, 170 N. Y. 271, 63 N. E. 279, and that, on the death of Elsa, Emma took in her own right under her mother's will. She is, therefore, not accountable for anything received from her mother's estate.

SCOTT, J., concurs.